# Edwards *v.* Logan.

*Action on Promissory Note, by Assignee against Maker.*

1. *Consideration of note; burden of proof.*—In an action on a promissory note, purporting to be given for professional services rendered by the payee, as an attorney, in a suit in which the maker was one of the sureties for the principal debtor; the suit being brought in the name of the other surety as assignee, and the execution of the note being admitted; the *onus* is on the defendant, pleading a want of consideration, to prove that, on a disagreement between the attorney and the principal debtor, as to the amount of the fee, the matter was referred to arbitration, and that the amount awarded had been paid by the principal.

2. *Same.*—But, these facts having been shown by the defendant, the *onus* is shifted to the plaintiff, to prove that the defendant executed the note with full knowledge of the arbitration, and that the liability of the sureties was not embraced in the arbitration.

APPEAL from the Circuit Court of Elmore.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by John A. Logan, against John Edwards; was commenced on the 2d January, 1879, and was founded on the defendant's promissory note for $125, dated the 4th September, 1877, and payable on or before the 1st March, 1878, with interest from date, to "L. E. Parsons, jr., or bearer, for value received of him in professional services rendered." The note was attested by said Logan, the plaintiff, and the complaint alleged that it had been transferred to him. The defendant pleaded, 1st, the general issue; 2d, want of consideration; 3d, "that the services for which said note was given had been paid to said payee before the making of said note, and the note was given in ignorance of the fact that said services had been paid for by one A. T. Hughes, for whom this defendant was merely a surety"; and issue was joined on all of these pleas. On the trial, a bill of exceptions was reserved at the instance of the defendant, in which the facts are thus stated:

"The plaintiff read in evidence the note sued on, and rested; and the defendant then introduced evidence tending to show that, heretofore, Hatchett and Trimble, as executors of Howell Rose, filed a bill in equity, in the Chancery Court of Elmore county, against A. T. Hughes, to enforce a vendor's lien on a tract of land sold to him by said executors, and recovered a decree in said cause, condemning said land to the payment of one installment of the purchase-money, ascertained to be about $2,500; that an appeal was taken

from said decree to the Supreme Court, and, in order to suspend the operation of said decree, said Hughes was required to give a *supersedeas* bond; and that said Logan and Edwards, the plaintiff and defendant in this suit, with one Letcher, became his sureties on said bond. R. M. Williamson was the solicitor of said Hughes, in said Chancery Court, and in the Supreme Court. The chancellor's decree was affirmed by the Supreme Court, at its —— term, 1877; and in entering the judgment in said Supreme Court, a decree was rendered against said Hughes and his sureties on the *supersedeas* bond, and execution was thereon issued against them, in the summer of 1877, and placed in the hands of the sheriffs of Elmore and Coosa counties, in which counties said Edwards and Logan lived; and the said executions being about to be levied on their property, the said Logan thereupon employed said Parsons, the payee of said note, to make a motion in the Supreme Court to correct the judgment entry, so as to release said sureties on said bond. The testimony tended to show that Edwards assented to said employment of Parsons; but there was conflicting evidence as to this. Parsons did attend to said motion in the Supreme Court, and made a written argument there; and the testimony tended to show that said R. M. Williamson, the solicitor of Hughes, likewise attended to said motion in the Supreme Court; and it also appeared that D. Clopton attended to the argument of said motion, at the instance of Parsons, and charged $25 for his services. The motion was granted by the Supreme Court, and the decree first rendered was so modified, that the sureties were not to be liable on their bond, except for the costs in the Supreme Court, until the lands should be sold, and, if they did not bring enough to satisfy said decree, the sureties were to be held responsible for any balance. It appeared, also, that said Parsons and Logan attended at the sale of the lands by the register, which took place on the 3d September, 1877; when the condemned property sold for more than enough to pay the decree, but left about $125 of the costs still unpaid.

"The testimony tended to show that, on the day of the sale, and after it was over, Logan and Parsons saw Hughes, and Logan told him, that Parsons had been employed to argue the motion in the Supreme Court, that a fee was due to him, and that he (Hughes) ought to pay it. Hughes at once said, that he was willing to pay any reasonable fee, and did not intend that his sureties should be losers by going on his bond; that he would pay any reasonable fee of said Parsons, but was unable to pay it at that time, and would secure it; and he then asked, what was Parsons' fee. Logan

told him, in the presence of Parsons, that it was $300. Hughes said, that was wholly unreasonable, and he would not pay any such fee, but would pay any reasonable sum; and he proposed to Logan, in the presence of Parsons, to leave the amount of the fee to W. P. Gaddis, a lawyer in Wetumpka. This was agreed to; and thereupon, said Logan, Parsons and Hughes went to the office of said Gaddis, and the services rendered by Parsons were then stated to Gaddis, in the presence of Logan, Parsons, and Hughes. Gaddis decided, that $25 was a reasonable fee; but Parsons *poohed*, and said that he had travelled three times from Rockford to attend to the matter, and his expenses were large; whereupon, Gaddis fixed the fee at $50, and Hughes thereupon executed his note for $50, payable to said Logan and Edwards.

"As to whether Parsons assented to leave the amount of his fee to the decision of Gaddis, there was a conflict in the evidence; and as to whether Parsons remained in Gaddis' office, there was a conflict. Parsons was a witness, and swore that he made no agreement of that sort; that he was present in the office when Gaddis made the decision, and immediately left the office (and there was conflict of evidence as to this); that he did not look to Hughes for his fee, and told Hughes he would not take his note for any amount (and as to this there was conflict); that Hughes was insolvent, and the only purpose of getting Gaddis to make any decision was to get as much as possible out of Hughes, for the purpose of reimbursing Logan and Edwards. The evidence of Hughes was to the effect, that the agreement to settle the amount of the fee was agreed to by Parsons and Logan, and that he remained in the office.

"The testimony tended to show, that Hughes paid the debt secured by said mortgage; that Parsons owed him a stable-bill, amounting to $16; that Hughes was sued by Logan for the $50, and Parsons was his attorney; that he claimed a set-off against the suit, to the extent of said bill, and Parsons agreed to allow it as a credit; that it was so allowed by the justice, and that Hughes paid the balance before this suit was brought. Parsons swore, that he had accounted to Logan for the amount of this set-off. The testimony tended to show, also, that on the day after the register's sale, and the day after Gaddis had so decided as to the amount of the fee, and on the day after said Hughes made the mortgage to secure said note for $50 and the said costs, Parsons and Logan went to the house of Edwards, the defendant, and there represented to him what services Parsons had performed in the Supreme Court on said motion, and stated the amount of

his fee, and insisted that said Edwards should give his note for $125; and that said Edwards thereupon executed the note now sued on. On the part of the plaintiff, the testimony tended to show that Parsons and Logan stated to Edwards, before the execution of said note now sued on, what had occurred in Gaddis' office the day before, and that Hughes had made the mortgage, as before herein set forth. But, on the part of the defendant, the testimony tended to show that Parsons and Logan did not disclose to Edwards what had been done by said Gaddis and Hughes, and that Edwards was ignorant of said decision of Gaddis, and of the fact that Hughes had executed his note for $50 for Parsons' services, and had given a mortgage to secure the same, until after the making of the note now sued on.

"The foregoing was, in substance, the whole of the evidence introduced on the trial; and upon the foregoing evidence," after the court had given several charges asked in writing by the plaintiff, the defendant requested a charge in writing, in these words: "If the jury believe, from the evidence, that the note sued on was given for the services of Parsons as an attorney, in making a motion in the Supreme Court in the case of Hatchett & Trimble against A. T. Hughes; and further, that the value of the services of said Parsons on said motion was, by the agreement and understanding of Logan, Parsons and Hughes, submitted for determination to W. P. Gaddis, a lawyer, and he decided that $50 was a reasonable fee; and that said Hughes thereupon executed a note for that sum, and secured the same by a mortgage; and further, that Logan, the plaintiff in this cause, and said Edwards, the defendant, were only the sureties of said Hughes in said cause in which the motion was made; then, if the note now sued on was afterwards made by Edwards, in the presence, and at the request of Parsons and Logan, without knowing or being informed of the facts of the arbitration of Gaddis, and the making of the note and mortgage by Hughes, then said note is without any valid consideration in law." The court refused this charge, and the defendant excepted to its refusal; and he now assigns its refusal as error, together with the charges given at the instance of the plaintiff, which it is not necessary to state, since this court does not notice them.

WATTS & SONS, for appellant, cited *Bullock v. Ogburn*, 13 Ala. 346; *Leger v. Bonnaffe*, 2 Barbour, 475; *Roberts v. Fisher*, 43 N. Y. 159; Wait's Actions & Defenses, vol. 1, p. 85.

L. E. PARSONS, Jr., and S. J. DARBY, *contra*, cited Parsons

on Contracts, vol. 1, 456; *Gaines v. Shelton,* 47 Ala. 417; *Maull v. Vaughn,* 45 Ala. 136; *Evans v. Bell,* 20 Ala. 509; *Paysant v. Ware,* 1 Ala. 160; *Bryant's Adm'r v. Stevens,* 58 Ala. 640.

STONE, J.—There are two phases of the testimony in this case, in conflict, and utterly irreconcilable with each other. The prime consideration of the note sued on, is professional services rendered by an attorney. The note, when read in evidence, being the cause of action declared on, imported a consideration, and needed no additional evidence to authorize a recovery. The professional services rendered were in favor of Hughes, as principal, and Logan and Edwards, as sureties in a *supersedeas* bond. For defendant (appellant here) it is claimed, that Hughes and the attorney differed about the value of the latter's services, and that they thereupon agreed to leave the matter of the sum to be paid, to the judgment and decision of another named attorney; that the said referee did fix and determine the amount of the fee, and Hughes had secured the same. He paid it afterwards, before this suit was brought; and that subsequently, the said attorney, who had rendered the services, in company with Logan, the co-surety, called on Edwards, and induced him to execute the note in suit, as his part of the fee. This, it is claimed by Edwards, was done by him in ignorance that the amount of the fee had been fixed, on a reference between Hughes, the principal, and the attorney, and had been paid by Hughes. The testimony of Edwards denies that he had been informed of this when he gave his note. For plaintiff it is claimed, that Hughes was insolvent; that being principal debtor, and Logan and Edwards only sureties, it was right and proper for the former to pay the fee, and thus exonerate his sureties, who had become bound only for his ease and accommodation; that in calling on him, the motive and purpose were to get from him as much of the fee as he would pay, because such payment would, to the extent of it, relieve his sureties; and that with the same purpose in view, the question of the amount had been referred to the outside attorney. The attorney who rendered the services for which compensation is claimed, had stated the amount of his charge; and the note in suit is one half of that sum, less the sum awarded against Hughes, and paid by him. It is claimed for plaintiff that, before Edwards gave his note, he was informed of the reference that had been made, the decision by the referee, and that payment was secured by Hughes. This secured sum was afterwards paid by Hughes.

[Heyman v. McBurney.]

The extent of the reference to the outside attorney, and whether Edwards, before he gave his note, was informed of all that had been done, were disputed questions of fact, which were proper for the jury's consideration. The note, though payable to the attorney, is declared on as the property of Logan. The note, importing a consideration, makes a *prima facie* case for plaintiff, and the duty is cast on the defendant to overcome that *prima facie* case. On him rests the burden of convincing the jury that his version of the case is the true one. We mean by this, that the duty rested on Edwards to prove, to the satisfaction of the jury, that on a disagreement as to the amount of fee proper to be charged for the services rendered, the question had been, by agreement, referred to another attorney, and that that other attorney had made his award, which was performed. If the jury find this to have been the case, then the *onus* is again shifted, and it becomes the duty of the plaintiff to satisfy the jury that, before executing the note, Edwards was informed of what had taken place, and the extent of it. The charge asked by defendant ought to have been given.

Reversed and remanded.